IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:14-CV-105-BO

| | | |
|---|---|---|
| DARYL K. GIBSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | O R D E R |
| | ) | |
| CORNING INCORPORATED, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the Court on the parties' cross-motions for summary judgment. [DE 26, 34]. Also pending are plaintiff's motions to impeach and suppress [DE 37], for entry of final judgment [DE 38], for multiple judgments [DE 39], for global settlement request [DE 40], for admissibility [DE 44] and for dispositive motions judgment [DE 45]. All are ripe for adjudication. For the following reasons, defendants' motion for summary judgment is GRANTED and plaintiff's motions are DENIED.

BACKGROUND

Plaintiff's pleadings vacillate between difficult to comprehend and bordering on nonsensical. Accordingly, the Court has balanced the summary judgment requirement that it view the facts in the light most favorable to the nonmoving party with the fact that it is often impossible to figure out plaintiff's version of the facts. As the precise nature of plaintiff's claims is unclear, the Court summarizes the multitude of incidents that may be a basis for some or any of plaintiff's claims to the best of its ability.

Defendant Corning Incorporated (Corning) is a company that manufactures glass and ceramics. Though Corning is based in New York, it has a large manufacturing plant in

Wilmington, North Carolina (the Wilmington plant). Pro se plaintiff Daryl Gibson was employed by Corning at the Wilmington plant from March 12, 2007, until his termination on January 25, 2013. Plaintiff is a 55-year-old African-American male. He was 47 years old when he was hired and 53 years old when he was terminated. He suffers from diabetes and a heart condition, as well as other medical conditions. While defendants knew about plaintiff's diabetes and heart condition, it is unclear whether they were aware of his other medical conditions.

This lawsuit appears to arise out of plaintiff's termination from his employment at Corning. Plaintiff sues not only Corning, but also a number of individuals who were employed at the Wilmington plant at the time of his termination: Larry Sutton, a union representative, Keith Howell, plaintiff's supervisor, Kadianne McPherson, the plant's human resources manager, Bill Karns, plaintiff's second-level supervisor until late 2010, Jim Enos, plaintiff's supervisor until sometime in 2009, Maria Scarsellatta, the labor relations coordinator for the Wilmington plant, and Anna Marie Allegretto, the administrative assistant for the medical department at the Wilmington plant.

Plaintiff's termination followed a series of events beginning with a disagreement between plaintiff and a co-worker, Sandra Blount. The precise dates the events occurred is in dispute, but is immaterial. It is important to note that on December 18, 2012, prior to the disagreement, plaintiff received a "meets expectations" performance review from his supervisor, Howell. Subsequently, plaintiff got into an argument with Blount. Blount called plaintiff lazy and told him to "go the hell on." [DE 35 at 5]. Plaintiff responded by telling Blount to "get the fuck away from him and leave him alone." [DE 26 at 4]. Both employees were disciplined by their superiors—plaintiff received a Level One Warning[1] for using abusive language and Blount was informally counseled. [DE 46 at 6]. When Howell (with Sutton present as plaintiff's union

---

[1] A "Level One Warning" is a verbal warning, Corning's lowest level of formal discipline.

2

representative) tried to administer the verbal warning in a later meeting, plaintiff became extremely agitated and ultimately threatened to harm Blount. Plaintiff was eventually terminated for threatening behavior effective January 25, 2013.

During the investigation of the incident with Blount, plaintiff alleged that Blount had previously sexually harassed him by touching his head, neck, and hair while telling him he needed a haircut, hugging him when he returned from leave, and telling him that he needed a "good Christian woman." [DE 26 at 5–6]. Corning investigated the claims of sexual harassment and determined that Blount's conduct did not warrant disciplinary action.

In 2011, well before the incident with Blount, plaintiff was denied two requests for Family and Medical Leave Act (FMLA) leave. [DE 35 at 10]. Both were after-the-fact requests for intermittent FMLA leave. Defendant Allegretto, who was responsible for the FMLA requests, denied one as untimely, and appears to have taken no action on the other, as plaintiff never followed her instructions to provide her with the form that covered the claimed condition. That same year, plaintiff filed a complaint with the U.S. Department of Labor about his FMLA leave, which was administratively closed in late 2011.

Plaintiff filed a workers' compensation claim against Corning in March 2012, and also made a complaint to North Carolina Occupational Safety and Health Division about a "hot glass" safety incident that occurred on December 28, 2012. The worker's compensation claim was settled in February 2013, after plaintiff's termination. The hot glass incident resulted in an inspection which also occurred in February 2013, after plaintiff was dismissed.

Plaintiff also has filed a number of administrative charges. He filed four charges in 2009, two with the U.S. Equal Employment Opportunity Commission (EEOC) and two with the National Labor Relations Board (NLRB), which were all disposed of that year. He also filed an

3

EEOC charge in November 2011, which was dismissed in June 2012. Plaintiff also filed a number of administrative charges around the time of his termination or afterward for which he has timely filed suit. NLRB Charge No. 11-CA-097859, filed on 1/23/13, Retaliatory Employment Discrimination Act (REDA) Complaint No. 023-13, filed on 1/14/13, and EEOC Charge No. 846-2013-14644, filed on 4/13/13. The NLRB charge was referred to arbitration, and the arbitrator found in Corning's favor on October 10, 2013. The other two charges were dismissed and notice of rights letters were issued on 2/20/14 and 11/25/13, respectively.

Plaintiff filed this suit on February 24, 2014. As mentioned above, his causes of action are not explicitly laid out in the complaint, and it is quite difficult to discern exactly what laws he claims defendants have violated. Construing his allegations liberally, the Court assumes that plaintiff is bringing federal claims of racial and sexual harassment, race and sex discrimination, and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* (Title VII), harassment, discrimination, and retaliation under the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* (ADA), age discrimination under the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* (ADEA), violation of the FMLA, 29 U.S.C. § 2601, *et seq.* (FMLA), violation of Section 8 of the Labor Management Relations Act, 29 U.S.C. §§ 127–28 (LMRA), violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* (FLSA), and violation of the OSHA, 29 U.S.C. § 15, *et seq.* Plaintiff also appears to bring pendent claims under North Carolina law for fraud, defamation, wrongful discharge in violation of public policy, and violation of the REDA, N.C. Gen. Stat. § 95–2540, *et seq.* Plaintiff seeks $65,000 in back-pay, reinstatement of his job, and $70 million in punitive damages for mental and emotional distress.

## MOTION FOR SUMMARY JUDGMENT

Both parties seek entry of summary judgment in their favor as to all claims. Summary judgment is proper only when, viewing the facts in the light most favorable to the non-moving party, there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Cox v. Cnty. of Prince William*, 249 F.3d 295, 299 (4th Cir. 2001). An issue is "genuine" if a reasonable jury, based on the evidence, could find in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Cox*, 249 F.3d at 299. When addressing cross-motions for summary judgment, the court must ask "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251.

In determining whether a genuine issue of material fact exists for trial, a trial court views the evidence and the inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex.* 477 U.S. at 323. Once the moving party has met its burden, the non-moving party must then "set forth specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

### CLAIMS THAT ARE NOT LEGALLY VIABLE

Prior to addressing the remaining claims on their merits, the Court will address some plaintiff's potential claims that, for various reasons, are not legally viable.

5

## Statute of Limitations

A number of plaintiff's claims are barred by the applicable statutes of limitations. This action was filed on February 24, 2014. Any claims related to events that transpired in 2009 are time barred, whether under Title VII, where the statute of limitations is 90 days from the issuance of the notice of rights letter, 42 U.S.C. § 1981, which has a four year statute of limitations, or state common-law fraud, N.C. Gen. Stat. § 1–52(9) or wrongful discharge, § 1–54(3), which have a three year statute of limitations. Accordingly, any claims relating to events that transpired in 2009 must be dismissed. As plaintiff's allegations against defendants Karns and Eos arise solely from events that concluded in 2009, those defendants must also be dismissed from this action. Accordingly, defendants' motion for summary judgment is granted on any claims relating to events that transpired in 2009 and on any claims against defendants Karns and Eos.

Plaintiff's defamation claims are barred by the applicable one-year statute of limitations. N.C. Gen. Stat. § 1–54(3). This action was filed more on February 24, 2014, more than one year after plaintiff's employment was terminated. Construing the facts in the light most favorable to plaintiff, any defamatory statements were made while he was still employed by Corning. Accordingly, plaintiff's defamation claim must be dismissed and defendants' summary judgment motion on that claim is granted.

## Title VII, ADEA, ADA, and Wrongful Discharge Claims against Individuals

Plaintiff is barred from asserting claims against individual defendants under Title VII, the ADEA, the ADA, and North Carolina's wrongful discharge statute. An individual is not an employer within the meaning of the ADEA. *Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 510–11 (4th Cir.) *cert. denied*, 513 U.S. 1058 (1994). Nor is an individual an employer within the meaning of Title VII. *Lissau v. S. Food Serv., Inc.*, 159 F.3d 177, 180 (4th Cir. 1998). In

deciding *Lissau,* the Fourth Circuit reasoned in part that the "sliding scale of liability [used to calculate damages in Title VII cases] does not stipulate an amount in cases where a plaintiff seeks to hold an individual supervisor liable." *Id.* at 181. The remedial scheme in Title VII as discussed by *Lissau* is identical to the remedial scheme in the ADA. Accordingly, as the Fourth Circuit has explained, it stands to reason that no individual liability for supervisors exists under the ADA either. *Baird ex rel. Baird v. Rose*, 192 F.3d 462, 472 (4th Cir. 1999).

Likewise, a claim for wrongful discharge under North Carolina law cannot be brought against an individual—a plaintiff may only bring suit against his employer for wrongful discharge. *Iglesias v. Wolford*, 539 F.Supp.2d 831, 839 (E.D.N.C. 2008); *Garner v. Rentenbach Constructors, Inc.*, 515 S.E.2d 438, 441 (N.C. 1999); *Sides v. Duke University*, 328 S.E. 2d 818, 827 (N.C. Ct. App. 1985), *overruled on other grounds by Kurtzman v. Applied Analytical Indus., Inc.,* 493 S.E.2d 20 (N.C. 1997). Accordingly, defendant's motion for summary judgment on plaintiff's Title VII, ADEA, ADA and North Carolina wrongful discharge claims as to the individual defendants is granted.

OSHA and FLSA Claims

Plaintiff cannot bring any claim for violation of the OSHA because no private right of action exists under that statute. *Scarborough v. Aegis Commc'ns. Group, Inc.*, 217 F.3d 840, 2000 WL 790965 (4th Cir. 2000) (unpublished) (per curiam) citing *Elliott v. S.D. Warren Co.*, 413 F.3d 1, 4 (1st Cir. 1998); *Williams v. Mead Westvaco Corp.*, No. 7:07–CV–171, 2007 WL 2327586 (W.D.Va. Aug. 10, 2007). Defendant's motion for summary judgment on any OSHA claim, therefore, is granted.

The FLSA establishes overtime pay, minimum wage requirements, and the forty-hour work week. 29 U.S.C. § 201 *et. seq.* Plaintiff has made no allegations that he was underpaid,

7

improperly paid, or that his employer violated the FLSA's hourly limits. Accordingly, defendants' motion for summary judgment is granted as to any FLSA claim.

LMRA Claims

Plaintiff generally alleges that defendants discriminated and retaliated against him because he filed complaints with the National Labor Relations Board (NLRB) and his Union. He further alleges that his employment was terminated for filing NLRB complaints and that he is "currently unemployed due to [defendants] blackballing my employment." [DE 4].

Section 7 of the LMRA provides employees with the "right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection . . . ." 29 U.S.C. § 157. Section 8 of the LMRA prohibits employers from interfering with, restraining, or coercing employees in the exercise of their Section 7 rights, from discriminating "in regard to hire or tenure of employment or term or condition of employment to encourage or discourage membership in any labor organization" and from "discharg[ing] or otherwise discriminat[ing] against an employee because he has filed charges or given testimony under this subchapter." 29 U.S.C. § 158(a)(1), (3), and (4). An employer is also prohibited from retaliating against an employee because the employee complained to his union or filed a grievance. *Diversified Indus.*, 208 NLRB 233 (1974).

In 1959, the Supreme Court articulated what has become known as the *Garmon* doctrine, noting that "[w]hen an activity is arguably subject to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted." *San Diego Bldg. Trades Council, Millmen's Union, Local 2020 v. Garmon*, 359 U.S. 236, 244 (1969). Accordingly, to the

8

extent that plaintiff's claims are alleged violations of the LMRA, those claims are preempted. The proper forum for those complaints is the NLRB and this Court lacks jurisdiction over them. Therefore, summary judgment for defendants on any LMRA claim is warranted.

## LEGALLY VIABLE CLAIMS

Plaintiff's remaining claims, though legally viable, all are subject to summary judgment in defendants' favor.

<u>Title VII, ADEA, ADA Termination Claims</u>

As discussed *supra*, any claims under Title VII, the ADA, and the ADEA are viable only against Corning. The substance of plaintiff's complaint appears to be devoted to allegations that he was discriminated against on the basis of his race, sex, age, and disability, and unlawfully retaliated against following the disagreement with Blount and the subsequent investigation.

Title VII makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . or national origin." 42 U.S.C. §§ 2000e–2(a). The ADA and ADEA likewise make it unlawful for employers to discriminate against individuals based on their race and age. 42 U.S.C. § 12101 *et seq.*; 29 U.S.C. § 621 *et seq.*. In such cases, there are two avenues through which a plaintiff may avoid summary judgment. First, a plaintiff may survive a summary judgment motion by presenting direct or circumstantial evidence that discrimination motivated the employer's adverse employment decision. *See Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284 (4th Cir. 2004). "The second method of averting summary judgment is to proceed under a 'pretext' framework, under which the employee, after establishing a prima face case of discrimination, demonstrates that the employer's proffered permissible reason for taking an adverse employment action is actually a pretext for discrimination." *Id.* at 285; *see also Ennis*

9

*v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 58 (4th Cir. 1995). Plaintiff has not presented direct evidence that any type of discrimination motivated Corning's adverse employment decisions, thus the Court addresses plaintiff's claims under the pretext framework.

Rather than addressing each claim individually, the Court will assume without deciding that plaintiff has made out a prima facie case of discrimination for each claim. Once that occurs, "the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Hill*, 354 F.3d at 285. Corning has met its burden by producing affidavits, signed under penalty of perjury, demonstrating that plaintiff was fired because he had communicated threats toward Blount. Communication of threats is a legitimate reason for discharge, as is a good-faith belief that threats have been made. *See, e.g., Holland v. Washington Homes, Inc.*, 487 F.3d 208, 214–15 (4th Cir. 2008) (affirming summary judgment on Title VII discrimination and retaliation claims where plaintiff was fired for threatening his supervisor).

In response to evidence that demonstrates Corning had a legitimate reason for terminating plaintiff, plaintiff has not put forth any evidence demonstrating that Corning's rationale was mere pretext for discrimination of any type. Aside from his denials of the threats (which the Court accepts as true), nothing in the record supports an inference that Corning did not believe plaintiff had threatened Blount when it made the decision to fire him. Accordingly, plaintiff cannot meet his burden "to prove, by a preponderance of the evidence, that the legitimate reasons offered by [] defendant were not its true reasons, but were a pretext for discrimination." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000). Therefore, summary judgment for Corning on plaintiff's Title VII, ADA, and ADEA discrimination claims is appropriate.

Title VII Sexual Harassment Claim

Plaintiff also appears to allege that Corning failed to properly investigate or address his claim of sexual harassment by Blount. The Court will assume that plaintiff intended to argue that Corning failed to properly investigate because a male victim was complaining about a female perpetrator and address this as an unlawful sex discrimination claim under Title VII. It is axiomatic that "Title VII does not provide a remedy for every instance of verbal or physical harassment in the workplace." *Lissau v. S. Food Serv, Inc.*, 159 F.3d 177, 183 (4th Cir. 1998). "Relief is unavailable where the alleged conduct is not severe or pervasive enough to create an objectively hostile or abusive work environment or where the victim does not subjectively perceive the environment to be abusive." *Id.* (internal quotations and citation omitted). To determine whether this standard is satisfied, courts consider, among other things, the frequency of the conduct, its severity, whether it is physically threatening or humiliating, whether the conduct interfered with work performance, and what psychological harm resulted. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993).

Plaintiff claims that Blount sexually harassed him by touching his head, neck, and hair while telling him he needed a haircut, hugging him when he returned from leave, and telling him that he needed a "good Christian woman." Taking plaintiff's accusations against Blount as true, Blount's conduct simply did not rise to the level of "severe or pervasive enough to create an objectively hostile or abusive work environment." *Lissau*, 159 F.3d at 183. Plaintiff does not state the frequency of the conduct, whether the conduct interfered with work performance, or what psychological harm resulted. Objectively, Blount's conduct cannot be considered either physically threatening or humiliating. Even if plaintiff subjectively perceived her actions as abusive, the conduct was not severe or pervasive enough to create an objectively hostile work

11

environment, thus his claims are insufficient to make out a prima facie case of sexual harassment. Summary judgment for Corning on plaintiff's unlawful sex discrimination claim is warranted.

FMLA Claims

Plaintiff alleges that Corning and the remaining individual defendants violated his rights under the FMLA. The FMLA provides employees with two types of protections: substantive entitlements and proscriptive protections. *Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 546 (4th Cir. 2006). Violations of the substantive entitlements are known as interference claims, while violations of the proscriptive protections are known as retaliation claims. *Id.* plaintiff appears to have raised both types of claims.

*A. Interference*

Plaintiff alleges that he was wrongfully denied leave under the FMLA. There were only two instances in which plaintiff was both provisionally and finally denied FMLA leave, both of which were in 2011. Though plaintiff does not clearly state against whom he brings this claim, the Court assumes that he raises this claim only against Corning and Allegretto, as they are the only two defendants involved with plaintiff's FMLA requests. This allegation constitutes an interference claim, which arises when an employer "interefere[s] with, restrain[s] or den[ies] the exercise of or the attempt to exercise, any right provided" by the FMLA. 29 U.S.C. § 2615(a)(1).

> To establish unlawful interference with an entitlement to FMLA benefits, an employee must prove that: (1) [he] was an eligible employee; (2) [his] employer was covered by the statute; (3) [he] was entitled to leave under the FMLA; (4) [he] gave [his] employer adequate notice of [his] intention to take leave; and (5) the employer denied [him] FMLA benefits to which [he] was entitled.

*Downs v. Winchester Medical Center*, 21 F.Supp.3d 615, 617 (W.D.Va. 2014) (citation omitted). At the time plaintiff was denied leave, FMLA regulations required an employee who

needed unforeseeable leave to provide notice "as soon as practical under the facts and circumstances of the particular case." 29 C.F.R. § 303(a), 73 Fed. Reg. 68099. An employer was entitled to require the employee to comply with its "usual and customary notice requirements applicable to such leave." *Id.* The regulations provided that FMLA leave could be denied if the employee failed to comply with the notice and procedural requirements. 29 C.F.R. § 303(c), 73 Fed. Reg. 68100.

Assuming that plaintiff was an eligible employee entitled to FMLA leave and Corning was covered by statute, plaintiff cannot demonstrate that he gave adequate notice. In both cases where plaintiff's FMLA leave was denied, it appears that he did not comply with Corning's notification or certification requirements. Both requests were submitted after the fact, and when Allegretto requested further documentation, plaintiff never provided it. Plaintiff has not disputed this. Accordingly, plaintiff has pled no facts that demonstrate that he gave his employer adequate notice or that he was denied benefits to which he was entitled. Therefore, defendants are entitled to summary judgment on plaintiff's FMLA interference claim.

*B. Retaliation*

It also appears that plaintiff alleges he was terminated for asserting his FMLA rights. Again, it is unclear against whom plaintiff brings this claim, but the only available defendants are Corning and the individuals who played a role in the termination decision: Howell, McPherson, Scarselletta, and Sutton. A retaliation claim arises when an adverse action is taken against an employee for exercising his substantive FMLA rights. 29 U.S.C. § 2615(a)(2); *Yashenko*, 446 F.3d at 546. The Fourth Circuit analyzes a claim that an employer discharged an employee for taking FMLA leave as a retaliation claim under the *McDonnell Douglas* burden-shifting framework. *Id.* at 550–551. Accordingly, plaintiff must establish a prima facie case of

retaliation by showing that (1) "he engaged in protected activity," (2) "the employer took adverse action against him," and (3) "the adverse action was causally connected to the plaintiff's protected activity." *Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 301 (4th Cir. 1998). Close temporal proximity between the adverse employment decision and protected activity can establish a prima facie case of causality. *Williams v. Cerebonics, Inc.*, 871 F.2d 452, 457 (4th Cir. 1989).

Here, the FMLA leave requests at issue were denied in 2011. Plaintiff was terminated for events that began in December 2012 and ended in January 2013. The 2011 leave requests and 2013 termination are too remote in time to establish a prima facie case. Even taking the facts in the light most favorable to plaintiff, he has demonstrated no causal connection between his FMLA leave and complaint and his termination. Moreover, even if he were able to establish a prima facie case, Corning has articulated a legitimate reason for his termination: threatening Ms. Blount, in response to which plaintiff has offered no evidence that the reason was pretextual. Accordingly, summary judgment for Corning and the individual defendants is appropriate on any FMLA termination claim.

North Carolina REDA Claim

Unlike the federal anti-discrimination laws, REDA provides for individual and employer liability. Accordingly, plaintiff's claims under REDA for OSHA or workers' compensation retaliation apply to Corning, as well as the individual defendants Howell, McPherson, Scarselletta, and Sutton, as they were involved in the events surrounding plaintiff's termination.

> REDA provides that
>
> No person shall discriminate or take any retaliatory action against an employee because the employee in good faith does or threatens to (1) File a claim or complaint, initiate any inquiry, investigation, inspection, proceeding or other

action, or testify or provide information to any person with respect to [a workers' compensation claim or an OSHA complaint.

N.C. Gen. Stat. § 95–241(1)(a) (workers' compensation) and (b) (OSHA complaints). Both plaintiff's workers' compensation claim and his "hot glass" complaint to OSHA fall within the scope of REDA. To state a claim under REDA, a plaintiff must show that (1) he exercised his right to engage in a protected activity; (2) he suffered an adverse employment action, and (3) a causal connection exists between the exercise of the protected activity and the alleged retaliatory action. *Wiley v. United Parcel Serv., Inc.*, 594 S.E.2d 809, 811 (N.C. Ct. App. 2004). If a plaintiff presents a prima facie case, the burden shifts to defendant to demonstrate, by a preponderance of the evidence that it "would have taken the same unfavorable action in the absence of the protected activity of the employee. N.C. Gen. Stat. § 95–241(b). "Although evidence of retaliation . . . may often be completely circumstantial, the causal nexus between protected activity and retaliatory discharge must be something more than speculation." *Swain v. Elfland*, 550 S.E.2d 530, 534 (N.C. Ct. App. 2001). A plaintiff may, however, "present evidence of close temporal proximity between the protected activity and the adverse employment action" to satisfy the element of causal connection. *Smith v. Computer Task Group, Inc.*, 568 F.Supp.2d 603, 615 (M.D.N.C. 2008).

Plaintiff has presented absolutely no evidence of a causal connection between either the workers' compensation claim or OSHA claim and his discharge. His complaint consists entirely and solely of speculation. Accordingly, the Court finds that plaintiff has not made out a prima facie case as to the workers' compensation claim. In an abundance of caution, the Court will

assume that the close temporal proximity between the OSHA complaint filed on December 28, 2012, and his termination on January 25, 2013, could satisfy the burden.[2]

Assuming plaintiff made out a prima facie case for violation of REDA based on his OSHA complaint, the statute provides an affirmative defense if the employer can show "by the greater weight of the evidence that it would have taken the same unfavorable action in the absence of the protected activity of the employee." N.C. Gen. Stat. § 95–241. As discussed *supra*, Corning has articulated a legitimate reason for terminating Gibson for cause: threatening to harm Blount. By virtue of the affidavits signed under penalty of perjury, Corning and the individual defendants have demonstrated that they are entitled to the affirmative defense as a matter of law under N.C.Gen.Stat § 95–241(b). It is clear, therefore, that summary judgment in favor of defendants on any REDA claims is appropriate.

Wrongful Discharge Claim

Plaintiff also alleges a claim for wrongful discharge pursuant to North Carolina public policy as stated in the North Carolina Equal Employment Practices Act (EEPA), N.C. Gen. Stat. § 143–422.1, *et seq.*. The public policy exception to the North Carolina's "employment-at-will doctrine is a 'narrow exception.'" *Roberts v. First-Citizens Bank & Trust Co.*, 478 S.E. 2d 809, 814 (N.C. Ct. App. 1997) (citation omitted). It is only applicable where "the public policy of North Carolina is clearly expressed within [the] general statutes or state constitution, or (2) potential harm to the public is created by defendant's unlawful actions." *McDonnell v. Guilford County Tradewind Airlines, Inc.*, 670 S.E.2d 302, 306 (N.C. Ct. App.) *disc. rev. denied*, 675 S.E.2d 657 (N.C. 2009). To date, FMLA violations have not been held to be within the scope of the public policy exception. *See, e.g, Schuler v. Branch Banking & Trust Co.*, No. 1:08-CV-378,

---

[2] The Court does not make the same assumption regarding the worker's compensation claim because that claim was filed ten months before Gibson's discharge.

16

2009 WL 3261665, at *5 (W.D.N.C. Oct. 8, 2009) (declining "to extend the North Carolina public policy exception to the at-will employment rule to include claims based on alleged violations of the FMLA" absent "guidance from the North Carolina courts or legislature.").

Accordingly, any wrongful discharge claim would have to be based on the alleged violations of Title VII, the ADA, the ADEA, or the REDA. Because summary judgment has been granted in favor of defendants on each of these claims, plaintiff's claim for wrongful discharge under North Carolina law fails as well. *See Hughes v. Bedsole*, 48 F.3d 1376, 1383 (4th Cir. 1995) (stating that the North Carolina Supreme Court "explicitly adopted the Title VII evidentiary standards in evaluating a state claim under" the EEPA); *Morris v. Bellsouth Telecomm., Inc.*, 302 F. Supp.2d 515, 524 (M.D.N.C. 2004) (dismissing plaintiff's EEPA claims on same grounds as her Title VII and ADA claims); *Whitings v. Wolfson Casing Corp*, 618 S.E. 2d 750, 753 (N.C. Ct. App. 2005) (stating that a REDA action is a supplemental remedy to the common law tort of wrongful discharge). Moreover, as North Carolina law does not create a private right of action for retaliation, plaintiff cannot assert that he was wrongfully terminated in retaliation for complaining about an EEPA-protected category. *McLean v. Patten Communities, Inc.*, 332 F.3d 714, 719 (4th Cir. 2003); *Mullis v. Mechs. & Farmers Bank*, 994 F.Supp. 680, 688 (M.D.N.C. 1997). Accordingly, summary judgment for defendants is appropriate on plaintiff's wrongful discharge claims.

Fraud

Plaintiff also appears to allege common law fraud against all remaining defendants. The elements of a fraud claim are (1) false representation or concealment of a material fact; (2) that is reasonably calculated to deceive; (3) that is made with the intent to deceive; (4) that does in fact deceive; and (5) results in damage to the injured party. *See, e.g, Becker v. Graber Builders, Inc.*,

17

561 S.E.2d 905, 910 (N.C. Ct. App. 2002). Plaintiff's reliance on the misrepresentation must be reasonable. *See, e.g., RD & J Properties v. Lauralea-Dilton Enterprises, LLC*, 600 S.E.2d 492, 498–99 (N.C. Ct. App. 2004). Summary judgment for the defendant is appropriate if a plaintiff fails to satisfy his burden on any one element of a fraud claim. *Id.*

Even if any or all of the defendants intentionally concealed or falsely represented material facts, it is completely unclear how plaintiff was deceived by or relied on any of the alleged misrepresentations such that he was injured. While he was ultimately terminated, no facts have been proffered that would demonstrate that his termination resulted from his reliance on intentional misrepresentations or concealment on the part of any of the named defendants. Accordingly, defendants are entitled to summary judgment as to this claim.

## PLAINTIFF'S MOTIONS

As the Court has granted defendant's Summary Judgment Motion as to all claims, plaintiff's motions are denied as moot.

## CONCLUSION

For the foregoing reasons, defendant's Motion for Summary Judgment [DE 34] is GRANTED. Plaintiff's Motion for Summary Judgment [DE 26] and all remaining motions [DE 37, 38, 39, 40, 44, 45] are DENIED AS MOOT. The Clerk is DIRECTED to enter judgment accordingly and to close the file.

SO ORDERED, this 8 day of April, 2015.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE